# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

Milwaukee Division

2023 JUN 26 P 12: 24

Alper KOLCU )
) Case No. 23-C-0849
)
) *(to be filled in by the Clerk's Office)*
)
*Plaintiff(s)* )
*(Write the full name of each plaintiff who is filing this complaint.* ) Jury Trial: *(check one)* ☑Yes ☐No
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
–v– )
)
)
Verizon Communications, Inc. )
(See attached Defendant List) )
)
)
*Defendant(s)* )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Alper Kolcu |
| Street Address | 225 N 66th St |
| City and County | Milwaukee, Milwaukee Co. |
| State and Zip Code | WI, 53213 |
| Telephone Number | 1(312) 404-2424 |
| E-mail Address | alkolcu@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name          VERIZON COMMUNICATION INC. (See Also Attached Def. List)

    Job or Title *(if known)*

    Street Address          1 VERIZON WAY, VC34W453,

    City and County        Basking Ridge, Somerset Co

    State and Zip Code     NJ 07920

    Telephone Number     908.559.0232

    E-mail Address *(if known)*

Defendant No. 2

    Name          Winsome Taik

    Job or Title *(if known)*     Verizon EEOC Compliance Mgr

    Street Address          One Verizon Way

    City and County        Basking Ridge, Somerset Co

    State and Zip Code     NJ 07920

    Telephone Number     908.559.5311

    E-mail Address *(if known)*   Winsome.Taik@verizon.com

Defendant No. 3

    Name          Verizon Business Ntwk Srvs, LLC.

    Job or Title *(if known)*     Agent for MCI Comm Services, LLC.

    Street Address          899 Heathrow Park Ln, 02-2135

    City and County        Lae Mary, Seminole Co.

    State and Zip Code     FL, 32746

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name          MCI Communications Srvs, Inc.

    Job or Title *(if known)*

    Street Address          One Verizon Way,

    City and County        Basking Ridge, Somerset Co

    State and Zip Code     NJ, 07920

    Telephone Number     855.202.4705

    E-mail Address *(if known)*

VERIZON COMMUNICATION INC.
1 VERIZON WAY, VC34W453,
Basking Ridge, NJ 07920

Verizon Business Ntwk Srvs, LLC.
Agent for MCI Comm Services, LLC.
(EIN#132745892)
899 Heathrow Park Ln, 02-2135
Lae Mary, FL, 32746

MCI Communications Srvs, Inc.
(EIN#470751768)
One Verizon Way,
Basking Ridge, NJ 07920



---------------------------------------------------
Thomas Pietila,
Joseph Glisczinski, VZB New Berlin
Mark Peeters, VZB New Berlin
Marc Fisher, VZB New Berlin
Corey Saffert, VZB New Berlin

Verizon Business Office (VZB New Berlin)
15725 Ryerson Rd,
New Berlin, WI, 53151
---------------------------------------------------
Kirti (Kitty) Rose, VZB HR Business Partner
14123 Cicero Rd
Houston, TX 77095
---------------------------------------------------
Chelsea J  Meyers, VZB HR Sr. Mgr
10000 Park Meadows Drive
Lone Tree, CO 80124
---------------------------------------------------
Leslie Stephenson, VZB HR Consultant
Michael Calantone, Verizon EEO Mgr
Winsome Taik, Verizon EEOC Compliance Mgr
John M Laughon, VZB HR
Lisa Lauture, VZB HR
Alice Hsieh, Corporate Attorney
Roy Piestley, Corporate attorney

One Verizon Way, Basking Ridge, NJ 07920
---------------------------------------------------
Verizon Benefits Center
Palatine, IL. 60055-0016
---------------------------------------------------
John Doe 1-9, Jane Doe 1-9, ABC Companies

C.    **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Verizon New Berlin Office |
| Street Address | 15725 Ryerson Rd, |
| City and County | New Berlin, Waukesha Co. |
| State and Zip Code | WI, 53151 |
| Telephone Number | 262.827.0260 |

II.    **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

See attached "II. Applicable Laws"

☑    Relevant state law *(specify, if known)*:

See attached "II. Applicable Laws"

☑    Relevant city or county law *(specify, if known)*:

See attached "II. Applicable Laws"

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☑ Failure to hire me.
- ☑ Termination of my employment.
- ☑ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: Disparate Treatment. Illegal actions, see attached Files I-VI

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

Starting October of 2019 throughout the employment up to termination on October 2021.

C.   I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☑ religion    Alevi Muslim
- ☑ national origin    Turkey
- ☑ age *(year of birth)*    1983    *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

Sleep Apnea, Respiratory Issues, Severe Depression

E.   The facts of my case are as follows. Attach additional pages if needed.

Please see attached;
- III. Disparate Treatment
- IV. Harassment
- V. Denial Of Accommodations
- VI. Federal Compliance Matter
- EEOC Complaint Case #443-2021-00971
- EEOC Complaint Case #443-2022-00352
- Preliminary Statement, dated 06/25/2023

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
March 06, 2021 and November 06, 2021.

B.  The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)*   03/27/2023   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

The defendant suffered not only extreme emotional stress but also series of physical harm resulting from the employer's malicious actions. The defendant had taken Short-Term-Disability, series of unpaid time-off, loss of income due to pretext low ratings. The defendant continues to have physical therapies as well as psychiatric visits to this day. The employer also discontinued the COBRA insurance retroactively to termination of employment which resulted the hospital bills exceeding $200K.
The defendant seeks $1,860,000.00 for loss revenue, emotional distress, loss of health, unpaid medical bills. In addition, the defendant seeks $100,000.00 for legal fees, experts and others involved.
The defendant seeks the items listed under Section "Relief" in the "Preliminary Statement" attached.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        06/25/2023

Signature of Plaintiff

Printed Name of Plaintiff        Alper Kolcu

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## PRELIMINARY STATEMENT



This complaint is submitted on behalf of Alper Kolcu (hereinafter "Al" and/or the "employee"

and/or "Kolcu" and/or "Complainant"); and without waiving any procedural or substantive rebuttals; He

respectfully submit it as a rebuttal to the formal response from respondent MCI Communications

Services LLC d/b/a Verizon (hereinafter, "Verizon" and/or "VZB" and/or the "Company" AND/OR

"Respondent") 1 entered on June 17th, 2021 in response to the above reference Charge filed by Alper

Kolcu of discrimination on the basis of disability, national origin (Turkey), religion (Muslim), race and

retaliation for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act

of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended. Information contained in

this rebuttal position statement is based on documents archived by the employee as of today and the

employee respectfully reserves the right to amend it in the future[2,3].

Al began his employment on or around May 20, 2019, and was employed as an Engineering

Specialist 3, described as management employee per Verizon standards while utilizing his Civil

Engineering degrees. During this employment, Al was subjected to various slurs regarding his national

origin and religion by Tom and few members of the team, located at New Berlin, Wisconsin.

---

[1] To the extent of the responses on aforementioned position, statements are not expressly admitted in this position statement, they are denied.

[2] The statements contained in this letter are based on the undersigned's understanding of the facts at the time of the letter of rebuttal to the employer's statement of position. By submitting this instant statement, the Employee in no way waives his rights to present new or additional facts, evidence or arguments to the Equal Employment Opportunity Commission, or any other entity as facts are discovered. The statements in this letter, while believed to be true and correct in all respects, do not constitute an affidavit. Moreover, this letter is submitted on the express condition that it not be used as evidence of any kind at any proceeding in connection with the above-referenced matter without the employee's consent.

[3] The employee reserves the rights to a discovery as found appropriate by the EEOC or other agencies having jurisdiction.

---

1

Preliminary Statement

Al complained to the Human Resources about the harassment he was subjected to on multiple occasions, and it did nothing to stop the harassment. Not only the HR disregarded Al's inquiries, but his manager also started retaliating against him by assigning additional work, lowering his performance review score, denying the bonus most employees receive, assigning him to field work throughout the winter months despite cold weather conditions and without the proper training or Personal Protective Equipment (PPE), which are listed as mandatory compliance per USA Department of Labor (DOL) and Occupational Safety and Health Administration (OSHA). *(See Exhibit 1 for details)*

During this time, he was forced to inspect underground (UG) manholes against his will and responsibilities. Despite the OSHA requirements set forth by USA DOL, he was not supplied with PPE, Traffic Control Measurements, City Permits for inspections, UG manhole inspection apparatuses or any other instruments set forth by OSHA standards. During these winter months, Al had two slip and fall incidents which were disregarded or displayed as poor skillsets of him. During the first months of 2020, Al started experiencing lower back pain and strains on his spine. He immediately sought Physical Therapy, however, found no available appointments until May 2020 due to Covid-19 pandemic. Since May of 2020, he has been visiting PT clinics, chiropractors, urgent clinics, Primary Care Physicist.

Due to excessive toxic gases Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020. *(See Exhibit A: Medical Reports- Confidential)*

In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back. As US government declared pandemic emergency under Covid-19 conditions, he wasn't able to secure a spinal specialist until May 2020. When the doctor ordered X-Ray on his lower back, it revealed injuries to his lower back including the region described as L3, L4 and L5-SI per spinal specialist terms. In addition, there were injuries to his facet joints

where it restricts his mobility, if not permanent, in the long term. *(See Exhibit A: Medical Records-Confidential)*

As a result, he was forced to take a leave of absence as an accommodation in May 2020. In November 2020, the Respondent stopped making disability insurance payments to AI and the remainder of the leave of absence was unpaid. In January 2021, he was told that he had to return to work in February 2021 or face termination. He has chosen to return under duress and was given a negative performance rating, low bonus and no raise for my work during the 2020 calendar year. When I returned some of my job duties were removed which is effectively a demotion. On February

4th of 2021, He also gave the Respondent a letter from a medical provider detailing accommodation requests which were not granted *(See Exhibit A: Healthcare Provider (HCP) medical report).* [3]

AI also has applied for at least 90+ positions within the past 2 (two) years and he has not been selected based on the retaliatory and discriminatory End-Of-Year evaluation he last received by his supervisor Tom Pietila in February of 2021. **(See attached list of jobs applied internally listed in Exhibit B; E-mail records. Confidential Information)**

<u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction pursuant to 29 U.S.C. § 701, Rehabilitation Act of 1973 and 28 U.S.C. §§ 1331, Title VII, and related sections applicable as the United States and/or its agencies are a named defendant to the action.

2. The unlawful employment practices alleged below were committed and/or executed by supervisory personnel of the MCI d/b/a Verizon Communications, Inc. ("VZB" or "employer"). The claims arise from events in the New Berlin, WI. Office of Verizon Business, Network Engineering Team located at 15725 W Ryerson Rd, New Berlin, WI, 53151. Accordingly, venue lies in the United States District

Court for the District of Columbia under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) and listed

under attached document labeled "II. Applicable Laws"

PARTIES

3.  The pro se Plaintiff, Alper Kolcu, is an adult individual who has a mailing address of 225 N 66th Street,

Milwaukee, WI, 53213.  His phone number is: (312) 404-2424.  His email is:alkolcu@gmail.com.  At all

relevant time prior to the demotion at issue in this matter, Plaintiff was Engineering Specialist III, working

for Verizon Business unit in design, permitting and management of network improvement projects.

4.  The Defendants, listed under the document "I- Defendant List", are/were management officials at the

Verizon New Berlin office, unless noted otherwise, that employed the Plaintiff and is the named

defendants herein in their official capacity. Defendants noted under Verizon HR Group are the

defendants herein in their individual capacity as well.

5.  Verizon engages in commerce for the purposes of businesses involved within the Telecommunications

Act and qualifies as an employer within the meaning of the statute and regulations at issue. Verizon is

also a Federal Contractor securing contracts listed in the attached documents "VI- Federal Compliance

Matter"

STATEMENT OF FACTS

6. The Plaintiff was hired for the position of Engineering Specialist III, for the Project Management of the

Office of Verizon Network Management on May 1, 2019.

7. The Plaintiff reported to Sr. Manager Thomas Pietila as his first level supervisor from May 1st  of 2019

to December 31st, 2021.

8. Plaintiff reported HR Complaints starting October of 2019 throughout his employment until Fall of

2021.

9. Plaintiff listed the timeline of events listed in the attached exhibits titled "III-Disparate Treatment", "IV-Harassment", "V-Denial Of Accommodations" and "VI-Federal Compliance Matter".

10. Plaintiff is a person with disability within the meaning of Rehabilitation Act of 1973, in that his impairment substantially interferes with the major life activities as listed in the document titled "Medical Records"

*Plaintiff's Prior Protected Activities*

11. Plaintiff entered HR complaint against the retaliatory and discriminatory behaviors of multiple people at the office, starting in October of 2019 throughout his employment up until termination on December 31st, 2021.

12. Plaintiff submitted EEOC complaint, as discrimination continued, on March 6th of 2021.

13. Plaintiff submitted EEOC complaint, as retaliation increased, on November 6th of 2021.

**The Plaintiff alleges that based on his disability identified above, his prior protected activities identified above, and based on his religion (Muslim Alevi), his national origin (Turkey) he was discriminated and retaliated against as follows:**

14. Faced discrimination listed under the document titled "III-Disparate Treatment"

15. Faced harassment listed under the document titled "IV-Harassment"

16. Denied reasonable accommodations listed under the document titled "V-Denial Of Accommodations"

17. Faced scrutiny with illegal actions against Federal Compliance

<u>CLAIM</u>

18. Due to excessive toxic gases Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020. (See Exhibit A: Medical Reports- Confidential)

19. In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back. As US government declared pandemic emergency under Covid-19 conditions, he wasn't able to secure a spinal specialist until May 2020. When

the doctor ordered X-Ray on his lower back, it revealed injuries to his lower back including the region described as L3, L4 and L5-SI per spinal specialist terms. In addition, there were injuries to his facet joints where it restricts his mobility, if not permanent, in the long term. **(See Exhibit A: Medical Records-Confidential)**

20. As a result, he was forced to take a leave of absence as an accommodation in May 2020. In November 2020, the Respondent stopped making disability insurance payments to Al and the remainder of the leave of absence was unpaid.

21. In January 2021, he was told that he had to return to work in February 2021 or face termination. He has chosen to return under duress and was given a negative performance rating, low bonus and no raise for my work during the 2020 calendar year. When Al returned some of his job duties were removed which is effectively a demotion. On February 4th of 2021, He also gave the Respondent a letter from a medical provider detailing accommodation requests which were not granted *(See Exhibit A: Healthcare Provider (HCP) medical report).* [3]

21. Al also has applied for at least 90+ positions within the past 300 days and he has not been selected based on the retaliatory and discriminatory End-Of-Year evaluation he last received by his supervisor Tom Pietila in February of 2021. **(See attached list of jobs applied internally listed in Exhibit B; E-mail records. Confidential Information)**

22. The evidence presented by Al in this case proves that the company acted with intentional discriminatory animus resulting in the deprivation of Al's fundamental civil rights.[6]

23. The employer fails to address the increased workload, continuous harassment details the employees provided and also lies about the chain of events on when Al's work responsibilities changed. [8,9]

24. The respondent's hostile and different treatment of Al compared to other members of the team, which are all White and Christian in faith, establishes additional evidence of religious discrimination as

well as circumstantial evidence of race, color, ethnic background, national origin and disability discrimination. [10]

25. Discriminatory motive can be inferred from the differences in the treatment of two groups. [10]

26. Direct evidence "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present" in the challenged conduct. [10]

27. Direct evidence can consist of statements of discriminatory intent. (See chain of email about "The Dog Incident" where Al clearly make apologies to the team about rescuing a dog. Tom replies to Al in an email indicating he should not have sent the email despite Al complains about Corey and Marc's statements about Al's trustworthiness. This incident was also shared with HRBP). [10]

28. Defendant tried to resolve the employment matters throughout the time with the professionalism by using communication skills, consulting with HR and reaching out to the upper leadership.

29. The defendant tried resolving employment matters by entering two EEOC cases in March and November of 2021.

30. The defendant agreed to have mediation to be carried out by EEOC.

31. The plaintiff refused to mediate with EEOC matters.

32. The plaintiff lied to the EEOC investigators about mass reduction of labor which included the defendant.

33. The plaintiff lied to the EEOC about the points system where the defendant received the lowest in the team during the selection process of reduction in force (RIF).

34. The defendant had one of the highest degrees in the office, most languages spoken (Turkish, English, Spanish and Chinese), higher education in 3 different continents, a decade of telecommunications experience in at&t wireline which is identical to Verizon Business (wireline), direct knowledge of engineering principals and the defendant was the only civil engineer in the office that is knowledgeable about the construction standards, OSHA compliance and any other compliance matters for local, state and federal government.

35. No other individuals that was subjected to the point average system was subjected to the scrutiny the defendant went through.

## RELIEF

The defendant suffered not only extreme emotional stress, pain, and suffering but also series of physical harm. In addition, the defendant suffered inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, fright, shock, humiliation, indignity, apprehension, marital strain, loss of self-esteem, anxiety, depression, loss of respect of one's friends and family, isolation, and grief  resulting from the employer's malicious actions. The defendant had taken Short-Term-Disability, series of unpaid time-off, loss of income due to pretext low ratings. The defendant continues to have physical therapies as well as psychiatric visits to this day. The employer also discontinued the COBRA insurance retroactively to termination of employment which resulted the hospital bills exceeding $200K.

- The defendant seeks $60,000.00 for loss revenue, unpaid time-off, low performance ratings.

- The defendant seeks $300,000.00 for emotional distress damages.

- The defendant seeks $250,000.00 for injury to character or reputation.

- The defendant seeks $250,000.00 for injury to credit standing.

- The defendant seeks $250,000.00 for loss of health.

- The defendant seeks $250,000.00 for marital strain.

- The defendant seeks $250,000.00 for unpaid medical bills.

- The defendant seeks $250,000.00 for fright, shock, humiliation, indignity, apprehension, loss of self-esteem, inconvenience, mental anguish, loss of enjoyment of life, anxiety, depression, loss of respect of one's friends and family, isolation, and grief.

- The defendant seeks $100,000.00 for legal expenses.

- The defendant seeks any additional fees or payments the honorable judge or the jury trial may find suitable or applicable. Also seek injunctive relief against the plaintiffs to prevent future violations of federal or state laws.

Preliminary Statement

<u>CONCLUSION</u>

28. To prove a prima facie case of discrimination, a complainant must be a member of a protected class under G. L. c. 272, § 98 and denied access to equal rights or restricted in the use of services, Workplace accommodations, permitted under The Americans with Disabilities Act. (See WI link) 5,6,7,8,9,10 The initial burden of establishing a prima facie case is not meant to be onerous; rather, the burden is "easily made" by simply producing evidence that the challenged conduct was "more likely than not" based upon impermissible factors. [5,6,7,8,9,10]

[5] Per, SEC. 2000e-6. [*Section 707*]  (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

[6] Per, Section 1977 of the Revised Statutes (42 U.S.C. 1981)  (2) Disability. In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and the regulations implementing section 501, or who violated the requirements of section 501 of the Act or the regulations implementing section 501 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

[7] It is well-settled that Title VI, Legal Manual of Department Of Justice, protects against retaliation. See, e.g., Peters v. Jenney, 327 F.3d 307, 318 (4th Cir. 2003); Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 83 (D.D.C. 2003); Gutierrez v. Wash. Dep't of Soc. & Health Servs., CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005). When a person reasonably believes that he or she has been the victim of discrimination that Title VI or other federal law prohibits, or has witnessed another person being discriminated against, that person should be able to report the alleged discrimination without fear of retaliation or fear that doing so will further jeopardize accessing benefits or services. Similarly, a person should be free to access the services, programs, and activities that federal financial assistance supports without fear that a recipient might discriminate against him or her merely for seeking access.

[8] It is well-settled that neither an agency nor a court need find that the underlying conduct about which the individual complained is discriminatory in order for the retaliation protection to attach. Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("[T]here is nothing [in the wording of the participation clause] requiring that the charges be valid, nor even an implied requirement that they be reasonable."); accord Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 358 (D. Mass. 2013) (quoting Wyatt), aff'd, 799 F.3d 99 (1st Cir. 2015); Slagle v. Cty. of Clarion, 435 F.3d 262, 268 (3d Cir. 2006); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999) ("The underlying charge need not be meritorious for related activity to be protected under the participation clause.") (citing Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999))

[9] Under Title VI, the evidence must show that (1) an individual engaged in protected activity of which the recipient was aware; (2) the recipient took a significantly adverse action against the individual; and (3) a causal connection exists between the individual's protected activity and the recipient's adverse action. See Peters, 327 F.3d at 320; Emeldi v. Univ. of Oregon, 673 F.3d 1218, 1223 (9th Cir. 2012); Palmer v. Penfield Cent. Sch. Dist., 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013); Kimmel, 639 F. Supp. 2d at 43; Hickey v. Myers, 852 F. Supp. 2d 257, 268 (N.D.N.Y. 2012); Chandamuri, 274 F. Supp. 2d at 84.

[10] "[A]although providing a similarly situated comparator is usually the most probative means of proving that an adverse action was taken for discriminatory reasons, it is not absolutely necessary." *Trs. of Health & Hosps. of Boston, Inc.*, 449 Mass. at 683.

Preliminary Statement

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in his favor against the Defendants or grant jury trial.

Respectfully Submitted,

June 25, 2021

Alper Kolcu

Plaintiff, Pro Se

225 N 66th Street,

Milwaukee, WI, 53213

Phone number (312) 404-2424

alkolcu@gmail.com

ATTACHED;  (All dated 6/25/2023)

| I) | Defendant List |
| II) | Applicable Laws |
| III) | Disparate Treatment |
| IV) | Harassment |
| V) | Denial of Accommodations |
| VI) | Federal Compliance Matters |
| VII) | EEOC Records |

EXHIBITS:

- Exhibit #1; OSHA Summary
- Exhibit #2; Verizon HR Records
- Exhibit #3; Verizon Employee Records
- Exhibit #4; Supporting Documents

EXHIBITS (CONFIDENTIAL)
- Exhibit A; Medical Records (Confidential)
- Exhibit B; Email Records (Confidential)

**Jurisdiction;**

- This Court has jurisdiction pursuant to 29 U.S.C. § 701, Rehabilitation Act of 1973 and 28 U.S.C. §§ 1331, Title VII, and related sections applicable as the United States and/or its agencies are a named defendant to the action.

**Discrimination;**

- Title I of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964
- ADA of 1990 (42 U.S.C. 12117(a)), and section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)),
- *42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3 and 2000e(m)*
- 42 U.S.C. 12205a
- 42 U.S.C. § 12112(a) and 12112(b)
-
- Executive Orders;  #11246, As Amended, EO #13672, EO #11478.
- 29 C.F.R. Part 1640 (issued jointly with the Department of Justice, 28 C.F.R. Part 37)
- Executive Order 12067
- Section 1977 of the Revised Statutes (42 U.S.C. 1981)  (2)
- 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

**Retaliation:**
- Under Section 704(a) of Title VII, Section 4(d) of the ADEA,
Section 503(a) of the ADA and Section 207(f) of GINA,

- The Equal Pay Act; Section 503(b) of the ADA.
- Laws under **OFCCP**: USA, DOL, Office of Federal Contract Compliance Programs.

## III. Disparate Treatment

A.  This is an employment-related action for violations of the employee, Alper Kolcu, (herein after "Al", "employee" or "Plaintiff")'s civil rights and other rights by his employer, MCI d/b/a Verizon Communications, Inc (Which is also a Federal Contractor), under Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The employer engaged unlawful employment discrimination and also retaliation in violation of Rehabilitation Act of 1973 and in violation of Title VII by engaging in discriminatory and retaliatory acts against the Plaintiff based on his religion (Alevi Muslim), national origin (Turkey), and his disability (Sleep Apnea, asthma, reactive airways disease and borderline chronic obstructive lung disease resulting from inhalation of smoke and the varied toxic fumes from the work assigned within hazardous toxic contaminants within the underground manhole/vaults, owned and/or operated by Verizon and/or joint-use partners)
Al began his employment on or around May 20, 2019, and was employed as an Engineering Specialist 3, described as management employee per Verizon standards while utilizing his Civil Engineering degrees. During this employment, Al was subjected to various slurs regarding his national origin and religion by Tom and few members of the team, located at New Berlin, Wisconsin.

Al complained to the Human Resources about the harassment he was subjected to on multiple occasions, and Verizon HR did nothing to stop the harassment. Not only the HR disregarded Al's inquiries, but his manager also started retaliating against him by assigning additional work, lowering his performance review score, denying the bonus most employees receive, assigning him to field work throughout the winter months despite cold weather conditions and without the proper training or Personal Protective Equipment (PPE), which are listed as mandatory compliance per USA Department of Labor (DOL) and Occupational Safety and Health Administration (OSHA). *(See Exhibit 1 for details)*

B.  The employer, and the office employers, knew Al is an Muslim-Alevi, his national origin is Turkey, he has disability including but not limited to listed above. Al also included the declaration of his disabled status in job application, as he was diagnosed with Sleep Apnea and had gone through an intensive upper respiratory surgery prior to his employment.
    1)  Tom also made derogatory comments about how people with accent shall not be allowed to make any presentations. Al included this complaint in his HR Case two times and Verizon HR failed to follow up with him. On his third inquiry about this incident, the HR partner made a contact with the instructor of the event where Tom made public comment. However, as this was more than a year after the incident, the instructor indicated he did not remember such remarks.

C.  The supervisor Thomas Pietila (hereinafter "Tom", "Tom P.", "Supervisor", "Sr. Manager") retaliated against Al by adding additional workload, ordered Al to inspect underground manhole vaults with no assistance from sub-contractors or other engineers. These duties were not in-line with the job description which Al had applied for. And no other Engineer or managers were ordered to inspect manholes in the history of MCI/Verizon New Berlin Office.

1) Upon removal of a female engineer, BB, who had responsibility of the western half of the engineering work within State of Wisconsin, his supervisor Tom did not split the workload across his team of dozen engineers. Rather he assigned Al to take over the work, initially mentioning to potentially hire a replacement. Upon hiring a replacement, and announcing via email that the new employee to be assisting in replacement of the female employee, Tom assigned the new employee, SX, to assist Verizon 5G Team consisting of 5 engineers.

2) Tom assigned Al with unsafe work within the downtown Milwaukee area without any traffic control, manhole pumping, purging or any other requirements set forth by OSHA **(Please see Exhibit 1-1D)**, few months following Al's first complaint to the HR in November of 2019. **(Verizon HR case#101025, Please see attached Exhibit #2C)**

   o Al also notified Verizon's independent HR complaint site called EthicsPoint and entered the details under the Report Key# 554623652301. **(Please see Exhibit 2(B).)** No HR representative follow-up with this inquiry until Summer of 2021.

   o On November 7 and 11, 2019 Tom visited Al's workspace confronting about the HR complaint. He told Al that he needs to clear this up or else "He would show where the door is…". He asked Al to nullify the HR investigations and indicate Al did it in a burst of personal upset.

   o Verizon HR did not make an attempt to Al's inquiry up until February 25th of 2020.

3) During this time, he was forced to inspect underground (UG) manholes against his will and responsibilities. Despite the OSHA requirements set forth by USA DOL, he was not supplied with PPE, Traffic Control Measurements, City Permits for inspections, UG manhole inspection apparatuses or any other instruments set forth by OSHA standards. During these winter months, Al had two slip and fall incidents which were disregarded or displayed as poor skillsets of him. During the first months of 2020, Al started experiencing lower back pain and strains on his spine. He immediately sought Physical Therapy, however, found no available appointments until May 2020 due to Covid-19 pandemic. Since May of 2020, he has been visiting PT clinics, chiropractors, urgent clinics, Primary Care Physicist.

4) Due to excessive toxic gases Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020. *(See Exhibit A: Medical Reports-Confidential)*

5) In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back. As US government declared pandemic emergency under Covid-19 conditions, he wasn't able to secure a spinal specialist until May 2020. When the doctor ordered X-Ray on his lower back, it revealed injuries to his lower back including the region described as L3, L4 and L5-SI per spinal specialist terms. In addition, there were injuries to his facet joints where it restricts his mobility, if not permanent, in the long term. *(See Exhibit A: Medical Records- Confidential)*

6) Lower qualified work assignments continued

7) Pay cut occurred due to poor performance ratings. Zero pay increase for Al as opposed to everyone else in team received 3-5% increase plus bonus, 401(k) and Stock Match.

D. Other Engineers(Level 3 or 4)  including but not limited to; Joseph G, Marc F, Mark P, Lisa S, Bryanna E and Corey S were not assigned with any of the "Outside work" that Al has been assigned in winter months. No other engineering group within Verizon's Midwest footprint performs such duties. All outside work is contracted to the construction vendors for construction, permitting vendors for permits and design vendors for design work.

However, Al was forced to perform manhole inspections against his will and employment practices without any support.

1) All engineers listed above were employed prior to Al and had established a working relationship with the supervisor Tom. They all reported to Tom within similar duties to Al's.
2) All engineers listed worked as a Project Manager (PM) rather than do actual design, permitting, construction or inspection.
3) All engineers were assigned with a master contract which allowed them to assign their daily duties over to vendors.
4) In fact, Verizon 5G Team handling a contract within Sun Prairie, WI has caused an explosion that killed one Fire Fighter in end of 2018. Despite, no one had been through any investigations or performance reviews similar to what AL has been through.

E. Upon 3(three) internal complaints Al reached out to EEOC with the initial complaint under EEOC #443-2021-00971 in March of 2021 after continuous disregard from Verizon HR group. The supervisor in conjunction with the Verizon HR Business Partners (Listed as defendants in the attached "Defendant List") started an oversight with a pretext motives to lower Al's Performance Evaluations starting May of 2021, which resulted with termination of employment in October of 2021.

1) No other engineer in the office had a performance review in a matter similar to Al's.
2) The so-called "Performance Improvement Plan" (PIP) review was prepared by Tom and Kitty (Kirti) who knew of Al's two initial complaints against Tom and few others in the office. However, she still had chosen to retaliate against Al.
3) If all other engineers were subjected to a so-called performance review, they, too, would have ended up with a 60-day probationary period, disciplined, denied promotion or terminated due to amount of work and structure of the performance goals.
4) There has been no performance-improvement evaluations performed within the last several years, up until Al has complained to HR about discrimination.
5) Verizon performs End of Year (EOY) Performance review where AL received satisfactory performance on his first year in 2019 and early 2020. However, due to his HR complaints it was switched to lower performance in 2021. The performance review for any given year is done in March of following year. Therefore, Al's supervisor Tom lowered Al's 2020 review in March of 2021, in a pretext move to initiate the PIP Review.
6) PIP review resulted termination of Al's employment in October of 2021.
7) Al initiated retaliation complaint to EEOC under Case #443-2022-00354, on November 9, 2021. Mid-March of 2022 the case was re-assigned to the EEOC Los Angeles, CA. On March 27th of 2022 this office dismissed the complaint.
8) During this time few engineers in the New Berlin Office got promotions.
   - Corey Saffert was promoted to a level-4 manager having less engineering experience than Al.
   - Marc Fisher was promoted to Lead Market Engineer.

- Mark Peeters was promoted to Level-4 Engineer.
9) None of the reasons stated in Al's termination or PIP review were included in the promotion of these individuals.

## IV. Harassment

In addition to the details supplied under Subject "I-Disparate Treatment", the following harassment incidents were observed.

A.  Al began his employment on or around May 20, 2019, and was employed as an Engineering Specialist 3, described as management employee per Verizon standards while utilizing his Civil Engineering degrees. During this employment, Al was subjected to various slurs regarding his national origin and religion by Tom and few members of the team, located at New Berlin, Wisconsin.

Al complained to the Human Resources about the harassment he was subjected to on multiple occasions, and Verizon HR did nothing to stop the harassment. Not only the HR disregarded Al's inquiries, but his manager also started retaliating against him by assigning additional work, lowering his performance review score, denying the bonus most employees receive, assigning him to field work throughout the winter months despite cold weather conditions and without the proper training or Personal Protective Equipment (PPE), which are listed as mandatory compliance per USA Department of Labor (DOL) and Occupational Safety and Health Administration (OSHA). **(See Exhibit 1 for details)**
- The complaints to the employer included statements made by the supervisor Tom and others within the team, dating back to September of 2019.
- Supervisor mocked Al about his religion and in one occasion said "What kind of muslim are you eating all that crap?" Referring to Al's choice of diet, etc…
- Supervisor is a retired US Army veteran, who could frequently refer to his duty moments, saying "I don't know how many of those bastards I shot!" talking about muslims in the Middle Eastern region.

B.  The employer, and the office employers, knew Al is an Muslim-Alevi, his national origin is Turkey, he has disability including but not limited to listed above. Al also included the declaration of his disabled status in job application, as he was diagnosed with Sleep Apnea and had gone through an intensive upper respiratory surgery prior to his employment.

C.  The supervisor Thomas Pietila (hereinafter "Tom", "Tom P.", "Supervisor", "Sr. Manager") retaliated against Al by adding additional workload, ordered Al to inspect underground manhole vaults with no assistance from sub-contractors or other engineers. These duties were not in-line with the job description which Al had applied for. And no other Engineer or managers were ordered to inspect manholes in the history of MCI/Verizon New Berlin Office.

1) Prior to and even after Al's complaint to the HR Group Tom watched other members of the team, Corey S. and Marc F., humiliate Al in public. (November 2019 through May 2020)
2) Tom sent email notifying Marc is the temporary lead manager on BAU work vs Al. Same email indicates the newly hired engineer, RJ, will be taking the lead, email dated 04/16/2020.
3) Workplace harassment continued due to non-responsiveness of the Verizon HR group.  (See emails in regard to "The Dog Incident" and group humiliation and defaming of Al in various emails)

4) Following the "Dog Incident" with Corey, Tom observed Al and Corey discussing the incident and Tom laughed when Corey said "Of course I don't believe a word from people from that part of the world…"

5) Tom sent an email to Al indicating people are watching me and talking about me in the hallway. Time to time, he would make snide comments about how people know to keep an eye on Al.

6) In December of 2019, Tom mentioned on a call that he drove past Al's residence to find out where he is.

7) In Spring of 2020 while Al is in a vendor meeting, Tom said he doesn't trust Al and that he will drive by to ask others If that was true. Later on asking vendors about his meeting and whereabouts of A, even If Al had replied to Tom via email.

D. Harassments continued and Al finally requested FMLA time-off due to mental health needs due to Extreme Emotional Stress.

1) Al had been seeing a Social Worker (Alicia M, LCSW) starting Spring of 2020 and she had recorded the chain of events and the emotional stress induced by Al's work environment. (See Medical Records. Confidential)

2) Al also started seeing a psychiatrist who recorded the continuous complaints and helped Al with coping mechanisms.

E. The respondent's hostile and different treatment of Al compared to other members of the team, which are all White and Christian in faith, establishes additional evidence of religious discrimination as well as circumstantial evidence of race, color, ethnic background, national origin and disability discrimination.

1) Discriminatory motive can be inferred from the differences in the treatment of two groups. And it appeared rest of the team was from a small community within Waukesha County, Wisconsin where most people are primarily white Christians.

2) The team found the religious jokes funny, despite his complaint to the HR.

F. Verizon HR did nothing to stop the hostile work environment.

G. No other engineer in the office had issues similar to Al's.

## V. Denial of Accommodations

In addition to the details supplied under Subject "I-Disparate Treatment" and "II-Harassment" the following incidents were observed, supporting Denial of Reasonable Accommodations.

A.  Al complained to the Human Resources about the harassment he was subjected to on multiple occasions, and Verizon HR did nothing to stop the harassment. Furthermore, it denied the reasonable accommodations Al's Licensed Clinical Social Worker and Psychiatrist suggested or supplied.
   -   Al made numerous requests to the Verizon HR about change of teams, position or even a region.
   -   Al requested accommodations to stop the retaliation.

B.  The supervisor Thomas Pietila (hereinafter "Tom", "Tom P.", "Supervisor", "Sr. Manager") retaliated against Al by adding additional workload, ordered Al to inspect underground manhole vaults with no assistance from sub-contractors or other engineers. These duties were not in-line with the job description which Al had applied for. And no other Engineer or managers were ordered to inspect manholes in the history of MCI/Verizon New Berlin Office.

   1)  Prior to and even after Al's complaint to the HR Group Tom watched other members of the team, Corey S. and Marc F., humiliate Al in public. (November 2019 through May 2020)
   2)  Tom sent email notifying Marc is the temporary lead manager on BAU work vs Al. Same email indicates the newly hired engineer, RJ, will be taking the lead, email dated 04/16/2020.
   3)  Workplace harassment continued due to non-responsiveness of the Verizon HR group.  (See emails in regard to "The Dog Incident" and group humiliation and defaming of Al in various emails)
   4)  Following the "Dog Incident" with Corey, Tom observed Al and Corey discussing the incident and Tom laughed when Corey said "Of course I don't believe a word from people from that part of the world…"
   5)  Tom sent an email to Al indicating people are watching me and talking about me in the hallway. Time to time, he would make snide comments about how people know to keep an eye on Al.
   6)  In December of 2019, Tom mentioned on a call that he drove past Al's residence to find out where he is.
   7)  In Spring of 2020 while Al is in a vendor meeting, Tom said he doesn't trust Al and that he will drive by to ask others If that was true. Later on asking vendors about his meeting and whereabouts of A, even If Al had replied to Tom via email.

C.  Harassments continued and Al finally requested FMLA time-off due to mental health needs due to Extreme Emotional Stress.
   1)  Al had been seeing a Social Worker (Alicia M, LCSW) starting Spring of 2020 and she had recorded the chain of events and the emotional stress induced by Al's work environment. (See Medical Records. Confidential)
   2)  Al also started seeing a psychiatrist who recorded the continuous complaints and helped Al with coping mechanisms.

D.  The respondent's hostile and different treatment of Al compared to other members of the team, which are all White and Christian in faith, establishes additional evidence of religious discrimination

as well as circumstantial evidence of race, color, ethnic background, national origin and disability discrimination.

       1) Discriminatory motive can be inferred from the differences in the treatment of two groups. And it appeared rest of the team was from a small community within Waukesha County, Wisconsin where most people are primarily white Christians.

       2) The team found the religious jokes funny, despite his complaint to the HR.

E. Verizon HR did nothing to stop the hostile work environment.

F. No other engineer in the office had issues similar to Al's.

## VI. Federal Compliance Matters

Verizon offers various purchasing and procurement options with US government agencies. It's details are posted on "Public Sector" section of the website Verizon.com. and it indicates a trusted technology partner involving US Government contracts including but not limited to DTS-P II (Defense Information System Agency), DISN (Defense Information System Network), PACOM (Pacific Command), Agency of FEMA, etc…

Al reached out to the Verizon HR group starting in October of 2019, throughout the Spring of 2020 and leading up to the termination of his employment, with numerous complaints indicating non-compliance to the US Federal Regulations including but not limited to the OSHA Standards.

A.  Al began his employment on or around May 20, 2019, and was employed as an Engineering Specialist 3, described as management employee per Verizon standards while utilizing his Civil Engineering degrees. Prior to his employment with Verizon, Al was an employee of Prime Contractor for design services under Tesinc, Inc. A subsidiary of publicly owned Telecom company, Dycom Industries, Inc. He was the market lead handling all matter related to Verizon's 5G network deployment.

Al established a working relationship with the local municipalities, several counties and Wisconsin Department of Transportation during his telecom Design Manager role in at&t as well as previous State Of Wisconsin government employment.

When his supervisor Thomas Pietila observed the work ethic and the performance of Al, he offered Al a job within Verizon Business unit, working directly for Verizon, the client.

B.  Shortly after start of employment, Tom's team gave Al instructions as to how and what they expected of him under this employment. Al was told Tom wanted to cut ties with Dycom and instead secure contracts with few other vendors that have close relationship with them by manipulating their progress reports.
    1)  He was tasked to setup rigged contract outsourced to minimum three vendors, as required by the corporate rules, split some work of the $100M+ contract to three, then not assign any work to the other two firms that they do not want to work with.
    2)  Al was instructed to de-scope projects from his previous employer as he knew the progress areas and areas of concerns.
    3)  Al was instructed to manipulate the data in a way that their close-ally has significant progress.
    4)  He was tasked with retaliation against not only the previous employer Dycom, but also the prime contractor handling western part of the state, Bear Communications.
    5)  Al was tasked to assign work to Tom's close friend handling small projects in IL, as Tom knew them from having worked in IL.

C.  The supervisor Thomas Pietila (hereinafter "Tom", "Tom P.", "Supervisor", "Sr. Manager") retaliated against Al by adding additional workload, ordered Al to inspect underground manhole vaults with no assistance from sub-contractors or other engineers. These duties were not in-line with the job

description which Al had applied for. And no other Engineer or managers were ordered to inspect manholes in the history of MCI/Verizon New Berlin Office.

1) Upon removal of a female engineer, BB, who had responsibility of the western half of the engineering work within State of Wisconsin, his supervisor Tom did not split the workload across his team of dozen engineers. Rather he assigned Al to take over the work, initially mentioning to potentially hire a replacement. Upon hiring a replacement, and announcing via email that the new employee to be assisting in replacement of the female employee, Tom assigned the new employee, SX, to assist Verizon 5G Team consisting of 5 engineers.

2) Tom assigned Al with unsafe work within the downtown Milwaukee area without any traffic control, manhole pumping, purging or any other requirements set forth by OSHA **(Please see Exhibit 1-1D)**, few months following Al's first complaint to the HR in November of 2019. **(Verizon HR case#101025, Please see attached Exhibit #2C)**

   o Al also notified Verizon's independent HR complaint site called EthicsPoint and entered the details under the Report Key# 554623652301. **(Please see Exhibit 2(B).)** No HR representative follow-up with this inquiry until Summer of 2021.

   o On November 7 and 11, 2019 Tom visited Al's workspace confronting about the HR complaint. He told Al that he needs to clear this up or else "He would show where the door is…". He asked Al to nullify the HR investigations and indicate Al did it in a burst of personal upset.

   o Verizon HR did not make an attempt to Al's inquiry up until February 25th of 2020.

3) During this time, he was forced to inspect underground (UG) manholes against his will and responsibilities. Despite the OSHA requirements set forth by USA DOL, he was not supplied with PPE, Traffic Control Measurements, City Permits for inspections, UG manhole inspection apparatuses or any other instruments set forth by OSHA standards. During these winter months, Al had two slip and fall incidents which were disregarded or displayed as poor skillsets of him. During the first months of 2020, Al started experiencing lower back pain and strains on his spine. He immediately sought Physical Therapy, however, found no available appointments until May 2020 due to Covid-19 pandemic. Since May of 2020, he has been visiting PT clinics, chiropractors, urgent clinics, Primary Care Physicist.

4) Due to excessive toxic gases Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020. ***(See Exhibit A: Medical Reports-Confidential)***

5) In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back. As US government declared pandemic emergency under Covid-19 conditions, he wasn't able to secure a spinal specialist until May 2020. When the doctor ordered X-Ray on his lower back, it revealed injuries to his lower back including the region described as L3, L4 and L5-SI per spinal specialist terms. In addition, there were injuries to his facet joints where it restricts his mobility, if not permanent, in the long term. ***(See Exhibit A: Medical Records- Confidential)***

6) Lower qualified work assignments continued

7) Pay cut occurred due to poor performance ratings. Zero pay increase for Al as opposed to everyone else in team received 3-5% increase plus bonus, 401(k) and Stock Match.

D. Other Engineers(Level 3 or 4) including but not limited to; Joseph G, Marc F, Mark P, Lisa S, Bryanna E and Corey S were not assigned with any of the "Outside work" that Al has been assigned in winter months. No other engineering group within Verizon's Midwest footprint performs such duties. All outside work is contracted to the construction vendors for construction, permitting vendors for permits and design vendors for design work.
However, Al was forced to perform manhole inspections against his will and employment practices without any support.

1) All engineers listed above were employed prior to Al and had established a working relationship with the supervisor Tom. They all reported to Tom within similar duties to Al's.
2) All engineers listed worked as a Project Manager (PM) rather than do actual design, permitting, construction or inspection.
3) All engineers were assigned with a master contract which allowed them to assign their daily duties over to vendors.
4) In fact, Verizon 5G Team handling a contract within Sun Prairie, WI has caused an explosion that killed one Fire Fighter in end of 2018. Despite, no one had been through any investigations or performance reviews similar to what AL has been through.

E. Upon 3(three) internal complaints Al reached out to EEOC with the initial complaint under EEOC #443-2021-00971 in March of 2021 after continuous disregard from Verizon HR group. The supervisor in conjunction with the Verizon HR Business Partners (Listed as defendants in the attached "Defendant List") started an oversight with a pretext motives to lower Al's Performance Evaluations starting May of 2021, which resulted with termination of employment in October of 2021.

1) No other engineer in the office had a performance review in a matter similar to Al's.
2) The so-called "Performance Improvement Plan" (PIP) review was prepared by Tom and Kitty (Kirti) who knew of Al's two initial complaints against Tom and few others in the office. However, she still had chosen to retaliate against Al.
3) If all other engineers were subjected to a so-called performance review, they, too, would have ended up with a 60-day probationary period, disciplined, denied promotion or terminated due to amount of work and structure of the performance goals.
4) There has been no performance-improvement evaluations performed within the last several years, up until Al has complained to HR about discrimination.
5) Verizon performs End of Year (EOY) Performance review where AL received satisfactory performance on his first year in 2019 and early 2020. However, due to his HR complaints it was switched to lower performance in 2021. The performance review for any given year is done in March of following year. Therefore, Al's supervisor Tom lowered Al's 2020 review in March of 2021, in a pretext move to initiate the PIP Review.
6) PIP review resulted termination of Al's employment in October of 2021.
7) Al initiated retaliation complaint to EEOC under Case #443-2022-00354, on November 9, 2021. Mid-March of 2022 the case was re-assigned to the EEOC Los Angeles, CA. On March 27th of 2022 this office dismissed the complaint.
8) During this time few engineers in the New Berlin Office got promotions.

- Corey Saffert was promoted to a level-4 manager having less engineering experience than Al.
- Marc Fisher was promoted to Lead Market Engineer.
- Mark Peeters was promoted to Level-4 Engineer.

9) None of the reasons stated in Al's termination or PIP review were included in the promotion of these individuals.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Los Angeles District Office**

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Los Angeles Direct Dial: (213) 785-3090
FAX (213) 894-1118
Website: www.eeoc.gov

Alper Kolcu                          2023 JUN 26 P 12: 2
225 N 66Th St.
Milwaukee, WI 53213

RE: <u>Alper Kolcu vs. Verizon Communication Inc.</u>
    EEOC Charge No.: 443-2022-00354

Dear Alper Kolcu:

The purpose of this letter is to inform you that the Los Angeles District Office of the U.S. Equal Employment Opportunity Commission (EEOC) has concluded its investigation of the above-referenced charge of employment discrimination. Under our Priority Charge Handling Procedures, we focus our limited resources on those charges in which we believe a violation of the laws enforced by EEOC can be found. EEOC management reviewed the information that you and the Respondent provided; however, it does not appear that additional investigation will result in the finding of a violation.

Respondent states that it did not discharge you due to national origin, religion and disability in retaliation for filing of EEOC charge No.:443-2021-00971 on April 29, 2021. Respondent further states that you were selected for inclusion in the Reduction in Force implemented by Respondent in the 4th quarter in 2021 and based on the on the outcome of evaluation under certain neutral criteria and objective rankings. Respondent also states that you were ranked lowest amongst your peers, scoring 9 out of a possible 30 points; therefore, your position was selected for inclusion in the enterprise-wide Reduction in Force. Respondent states that you were not excluded but were one of over 750 employees who were part of Reduction in Force. The entire scope of evidence indicates that Respondent did not take an adverse employment action against you and/or, otherwise, acted with any discriminatory intent.

The EEOC will be terminating its investigation into your allegations. We fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce. Enclosed is your Dismissal and Notice of Right to Sue. The Dismissal and Notice of Right to Sue is final. It will explain your right to pursue the matter in court. If you want to pursue your charge, you may do so on your own by filing in Federal District Court within 90 days of receiving the Notice of Right to Sue. If you do not file a lawsuit within the required 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC. For questions, please feel free to call me at 213- 894-1436.

                    Sincerely,    **Lina G. Williams**
                                             Digitally signed by
                                             Lina G. Williams
                                           Date: 2023.03.27
                                           16:24:10 -07'00'

                    Lina G. Williams,
                    Federal Investigator

Date: March 27, 2023

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **443-2021-00971** |

| | | |
|---|---|---|
| **WISCONSIN EQUAL RIGHTS DIVISION** | | and EEOC |
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **ALPER KOLCU** | **(312) 404-2424** | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **225 N 66TH ST, MILWAUKEE,WI 53213** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **VERIZON COMMUNICATION INC.** | **501+** | **(908) 559-0232** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **1 VERIZON WAY, VC34W453, BASKING RIDGE, NJ 07920** | | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest | Latest |
| ☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☒ NATIONAL ORIGIN | **10-01-2019** **04-19-2021** |
| ☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment on or around May 20, 2019. I am employed as a Civil Engineering Specialist 3. During my employment, I was subjected to various slurs regarding my national origin and religion. I complained to the Human Resources about the harassment I was subjected to on multiple occasions and it did nothing to stop the harassment. As a result, I was forced to take a leave of absence as an accommodation in May 2020. In November 2020, the Respondent stopped making disability insurance payments to me and the remainder of my leave of absence was unpaid. In January 2021, I was told that I had to return to work in February 2021 or face termination. I chose to return under duress and was given a negative performance rating and no bonus for my work during the 2020 calendar year. When I returned some of my job duties were removed which is effectively a demotion. On February 4, 2021, I also gave the Respondent a letter from a medical provider detailing accommodation requests which were not granted. I also have applied for at least 70 positions within the past 300 days and I have not been selected based on the retaliatory and discriminatory evaluation I last received.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Alper Kolcu on 04-29-2021 12:59 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 443-2021-00971 |

## WISCONSIN EQUAL RIGHTS DIVISION
*State or local Agency, if any*     and EEOC

I believe that I was discriminated against on the basis of disability, national origin (Turkey), religion (Muslim) and retaliation for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Alper Kolcu on 04-29-2021 12:59 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [ ] FEPA | |
| | [X] EEOC | **443-2022-00354** |

**Wisconsin Equal Rights Division** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Alper Kolcu** | **(312) 404-2424** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **225 N 66TH ST, Milwaukee, WI 53213** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **VERIZON COMMUNICATION INC.** | **500 or More** | **(908) 559-0232** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1 VERIZON WAY, VC34W453, Basking Ridge, NJ 07920** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| [ ] RACE | [ ] COLOR | [ ] SEX | [X] RELIGION | [X] NATIONAL ORIGIN |
|---|---|---|---|---|
| [X] RETALIATION | [ ] AGE | [X] DISABILITY | [ ] GENETIC INFORMATION | |
| [ ] OTHER *(Specify)* | | | | |

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **10-28-2021** | **10-28-2021** |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**On April 29, 2021, I filed charge number 443-2021-00971. On October 28, 2021, I was discharged.**

**I believe that I was discriminated against on the bases of disability, national origin (Turkey), religion (Muslim) and retaliation for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.**

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x 11/09/2121   x *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date      *Charging Party Signature* | |

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

3/16/2022

# EEOC #443-2022-00352
# KOLCU, Alper
# Rebuttal to Respondent's
# Position Statement

Alper Kolcu v. Verizon Communications Inc.
EEOC Charge No: 443-2021-00971 (Filed April 2021)

Alper Kolcu v. Verizon Communications Inc.
EEOC Charge No: 443-2022-00354 (Filed October 2021)

Alper (Al) Kolcu – hereinafter "Al" or "Employee"

225 N 66TH ST,
MILWAUKEE, WI, 53213
(312) 404-2424
alkolcu@gmail.com

# EEOC #443-2022-00352
# KOLCU, Alper
# Rebuttal to Respondent's Position Statement

## VIA EEOC Respondent Portal

Ms. Aurora Cheong
Federal Investigator
U.S. Equal Employment Opportunity Commission
Milwaukee Area Office
310 West Wisconsin Ave., Suite 500
Milwaukee, WI 53203

Re:    **Alper Kolcu v. Verizon Communications Inc**
**EEOC Charge No. : 443-2022-00352 (Retaliation**

Dear Ms. Cheong:

This rebuttal is submitted on behalf of Alper Kolcu (hereinafter "Al" and/or the "employee" and/or "Kolcu" and/or "Complainant"); and without waiving any procedural or substantive rebuttals; He respectfully submit it as a rebuttal to the formal response from respondent MCI Communications Services LLC d/b/a Verizon (hereinafter, "Verizon" and/or "VZB" and/or the "Company" AND/OR "Respondent")[1] entered on June 17th, 2021 in response to the above reference Charge filed by Alper Kolcu of discrimination on the basis of disability, national origin (Turkey), religion (Muslim), race and retaliation for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended. Information contained in this rebuttal position statement is based on documents archived by the employee as of today and the employee respectfully reserves the right to amend it in the future[2,3].

---

[1] To the extent of the responses on aforementioned position, statements are not expressly admitted in this position statement, they are denied.

[2] The statements contained in this letter are based on the undersigned's understanding of the facts at the time of the letter of rebuttal to the employer's statement of position. By submitting this instant statement, the Employee in no way waives his rights to present new or additional facts, evidence or arguments to the Equal Employment Opportunity Commission, or any other entity as facts are discovered. The statements in this letter, while believed to be true and correct in all respects, do not constitute an affidavit. Moreover, this letter is submitted on the express condition that it not be used as evidence of any kind at any proceeding in connection with the above-referenced matter without the employee's consent.

[3] The employee reserves the rights to a discovery as found appropriate by the EEOC or other agencies having jurisdiction.

Al began his employment on or around May 20, 2019, and was employed as an Engineering Specialist 3, described as management employee per Verizon standards while utilizing his Civil Engineering degrees. During this employment, Al was subjected to various slurs regarding his national origin and religion by Tom and few members of the team, located at New Berlin, Wisconsin.

Al complained to the Human Resources about the harassment he was subjected to on multiple occasions, and it did nothing to stop the harassment. Not only the HR disregarded Al's inquiries, but his manager also started retaliating against him by assigning additional work, lowering his performance review score, denying the bonus most employees receive, assigning him to field work throughout the winter months despite cold weather conditions and without the proper training or Personal Protective Equipment (PPE), which are listed as mandatory compliance per USA Department of Labor (DOL) and Occupational Safety and Health Administration (OSHA). *(See Exhibit 1 for details)*
-----------------
During this time, he was forced to inspect underground (UG) manholes against his will and responsibilities. Despite the OSHA requirements set forth by USA DOL, he was not supplied with PPE, Traffic Control Measurements, City Permits for inspections, UG manhole inspection apparatuses or any other instruments set forth by OSHA standards. During these winter months, Al had two slip and fall incidents which were disregarded or displayed as poor skillset of him. During the first months of 2020, Al started experiencing lower back pain and strains on his spine. He immediately sought Physical Therapy, however, found no available appointments until May 2020 due to Covid-19 pandemic. Since May of 2020, he has been visiting PT clinics, chiropractors, urgent clinics, Primary Care Physicist.

Due to excessive toxic gases Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020. *(See Exhibit A: Medical Reports- Confidential)*

In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back. As US government declared pandemic emergency under Covid-19 conditions, he wasn't able to secure a spinal specialist until May 2020. When the doctor ordered X-Ray on his lower back, it revealed injuries to his lower back including the region described as L3, L4 and L5-SI per spinal specialist terms. In addition, there were injuries to his facet joints where it restricts his mobility, if not permanent, in the long term. *(See Exhibit A: Medical Records- Confidential)*

As a result, he was forced to take a leave of absence as an accommodation in May 2020. In November 2020, the Respondent stopped making disability insurance payments to Al and the remainder of the leave of absence was unpaid. In January 2021, he was told that he had to return to work in February 2021 or face termination. He has chosen to return under duress and was given a negative performance rating, low bonus and no raise for my work during the 2020 calendar year. When I returned some of my job duties were removed which is effectively a demotion. On February 4th of 2021, He also gave the Respondent a letter from a medical provider detailing accommodation requests which were not granted *(See Exhibit A: Healthcare Provider (HCP) medical report).* [3]

Al also has applied for at least 90+ positions within the past 300 days and he has not been selected based on the retaliatory and discriminatory End-Of-Year evaluation he last received by his supervisor Tom Pietila in February of 2021. **(See attached list of jobs applied internally listed in Exhibit B; E-mail records. Confidential Information)**

## TIMELINES

- Al started working for MCI Communications D/B/A Verizon OR VZB, on 05/20/2019.
- Al and Bonnie Beach (Eng. Specialist III) observed workplace discrimination. Bonnie left in September 2019 as the Verizon Wisconsin team had discriminated against her due to her same sex marriage status.
  - o Bonnie got fired from Verizon after she had moved to IA team due to false allegations.
  - o A legal case against Verizon was pursued by Attorney Brooke at Timmer/Judkins Law Office and a potential settlement between Bonnie and Verizon had been reached in 2021.
- Al contacted VZB HR first time through company EEO website with Report Key **#554623652301**, on 11/06/2019. VZB **HR Case #101025**.
  - o This complaint requested an in-person training for the office for Unconscious Bias and diversity/inclusion.
  - o HR never returned Al's inquiries and did not respond back until Al started his second complaint 3 months later, in February 2020.
- Tom started assigning additional workload on Al, following the initial HR inquiry. (Nov.2019)
  - o Assigned Bonnie's geographical area to Al, despite a new person hired. (Nov. 2019)
  - o Assigned Al to go into underground manhole (MH) vaults, despite lack of OSHA safety. (Jan. 2020)
  - o Tom watched other members of the team, Corey S. and Marc F., humiliate Al in public. (November 2019 through May 2020)
- Al contacted new HRBP, Kirti Rosa, in February 2020.
- Tom assigned Marc F. as the new BAU Manager, mandated Al to train Marc and new engineer RJ for BAU work while mandated Al to work in 3GIS map drafting, in first half of March of 2020.
- Tom sent email notifying Marc is the temporary lead manager on BAU work vs Al. Same email indicates the newly hired engineer, RJ, will be taking the lead, email dated 04/16/2020.
- Al applied and exercised FMLA/Short-Term-Disability between 05/04/2020 through 11/01/2020 then unpaid Leave-Of-Absence from 11/01/2020 through 02/15/2021.
- Tom left derogatory remarks on Al's End-Of-Year review of 2020, on 02/25/2021. This resulted a red flag on 70+ job applications Al applied internally at Verizon.
- Al contacted VZB-EEO through website inquiry for documents. First on April 2021, second time July 2021 with Report Key **#459579811501.** VZB HR Case **# 107639**
- Al contacted U.S. EEOC government agency; charge filed 04/29/2021. **#443-2021-00971**
- **VZB** took further actions on denying Al the necessary training for the role he is assigned to.
- VZB denied accommodations to several inquiries from Al and his healthcare providers, an LSCW Alice Mackey and Psy. MD. Selahattin Kurter.
- VZB started implementing performance evaluations on Al's work starting in May of 2021 as pre-text to induce a Performance Implement Plan (PIP).

---

[4] Per, *42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3* The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title [section 703 or 704]

[5] 42 U.S.C. § 12112(a).

- o A 60-day PIP declared with malicious reasons, beginning July 9th, 2021. Attached copy of the initial PIP is not signed, nor made aware of to Al. Tom continued to interact with Al via emails (Attached) where he writes daily expectations and Al had been complying with 90% accuracy.
- o A 30-day extension of PIP declared by Tom and Hr. on/around 9/24/21. Contrary to the extension, Tom and Al had reduced the daily touch-base calls to one meeting every other day due to increased productivity and meeting of expectations. Nonetheless, VZB extended the PIP for 30 days without validating the facts.
- 10/27/21, HRBP Leslie S. denied the most recent request for accommodation to transfer Al to a different organization.
- 10/28/21; VZB notified Al that his position is eliminated due to Reduction-in-Force.
- 12/21/21: VZB terminated Al's employment and did not allow internal transfers or job opportunities.

# INTRODUCTION

This case is about a minority immigrant who faced various discrimination throughout his employment at Verizon, especially beginning in Fall of 2019, after his supervisor Tom Pietila (herein "supervisor" and/or "Tom" and/or "Tom P.") questioned his faith as well as the faith of the family.

At one instant Tom P. stated, "I didn't know you are not Christian!" with a very concerned face. In another incident he stated "What kind of Muslim are you? How come you're eating bacon!" and further ridiculing the employee in public.

Due to increased toxic behaviors at worksite, Al reached out to Verizon ethics Hotline and requested to have the entire team go through an in-person diversity training, instead of finger-pointing at Tom or other individuals. The entire goal of this inquiry was to make the team aware of how others might perceive such ignorant behaviors and there is an unconscious bias credo at the office. Al's request was never recognized by the HR department as a substantial inquiry. **(See supporting details/docs)**

Since the initial HR inquiry, the supervisor and few individuals favored by him started retaliating against Al by making public comments, public shaming, ridiculing him for who he is and where he is from. Throughout the last two years he had shared numerous examples as to what is taking place at work, only to face more retaliation from the company overall.

Al has set forth sufficient evidence to support a probable cause finding and establish a prima facie case of discrimination at workplace including continuous retaliation based on the factual background, documents shared with the employer as well as documents attached herein.

# BACKGROUND INFORMATION

Below information is prepared in parts to a response to Verizon's opening statement, a rebuttal or denial to the employer's claims on lack of timelines, as outlined below;

- Initial Charge of Discrimination signed on 4/29/2021, in accordance to EEOC form number #5, Charge Of Discrimination (Form Date of 11/09) was prepared by initial EEOC investigator, Jacob Sobieszczyk (herein the "investigator"), and was shorten from the full details (three (3) emails including details uploaded on 4/21/21) supplied by the employee to/on EEOC Portal as well as emails sent to the investigator previously via emails on April 16th, 2021. **(See attached)**
- Document titled "<u>**Kolcu, Alper -Verizon-MCI EEOC#443-2021-00971**</u>" summarizes the chain of events occurred throughout the employment of Al between the initial HR complaint up to the date of Initial EEOC Interview performed on April 15th, 2021.
- In addition to these, Al filed the original complaint to Verizon Human Resources Business Partner (herein "VZB" and/or "HRBP") under the <u>**EEO Report Key#554623652301**</u> ( *Please see VZB HR Case Details attached*) which was disabled to Al's access until 07/16/2021. Verizon Corporation uses variety of Artificial Intelligence (AI) applications which limits the employee's access to certain defense materials[3].
  - o Al reached out to the HRBP contact, Bianca Ogando, through internal email and messaging services (I.e; Jabber) starting on 11/13/19 and throughout rest of 2019. Al notified Bianca that he is afraid of being retaliated (See Jabber screenshot with message history- See Document "***KOLCU, Alper - Exhibit 2(A); VZB HRBP- Bianca O. Chat History***"
    As of today's letter, there was no official notification to Al on what discussions Al and Bianca held, and what information was exchanged.
  - o The VZB HR Case Report which was shared on 07/16/21, after two years of failure to follow-up, includes a note indicating the employee is wishing to nullify the HR complaint.
    This information is added there without the consent of the employee and has no face value. Al continuously reached out to the HR about the updates beginning of November of 2019 up until 07/17/2021 upon receiving the report. There yet to be a record of communication between Al and Bianca or others about the original complaint.
    It wasn't until January of 2021 when Michale C (HRBP) reached out to Al indicating the complaint was not substantiated since Tom P. denied the allegations and no one in the Leesburg, VA training session recalled the inconsiderate jokes Tom made in Fall of 2019.
- In February/March of 2020, Al submitted a second HR internal complaint, through email, to the new HRBP contact, Kirti Rosa, in order to address the timeliness of the first one as well as the issues of ongoing harassment, no Report Key number is supplied to the employee under this complaint. However, both parties (Employer and the employee) admit this is the second complaint as outlined by the Charging Investigations as well as the footnote (#3) on page 2 of 14, on employer's position statement dated June 17th, 2021.
  - o This second HR Internal Complaint included Tom's retaliation against Alper by changing his duties to a lower rank role including inspection of underground manhole structures owned and operated by Verizon. Al brought up his concerns to Tom and Sr. Engineer, Joseph Glisczinski in email dated 03/10/2020. However, Tom mandated that Al personally inspect

all manholes by walking in field, a contrary move for an Engineering Specialist at Level 3
(Management Employment standards by Verizon). **(See supporting documents attached)**

- ▪ This is the very first failure of VZB HR to protect the employee from continuous
  retaliation and discrimination. While the HR made contact with Tom and his
  supervisor/director Marty Hersh (herein "Director" and/or "Marty H.")
- o A third HR/Ethics complained initiated by the corporate counsel Alice Heish and Roy, in
  April/May of 2020. This contact was mandated to be a attorney/client confidential and not
  to be disclosed to others without their consent or a court order.
- o A fourth HR/EEO complaint was initiated by Leslie Stephenson who is an HR Specialist in
  Workplace Accommodations Team within Verizon organization, in Fall of 2020, after AL
  submitted a formal request to switch organizations.
  - ▪ Mike C. was engaged as the HR/EEO specialist to investigate the potential
    misconduct. AT this time Mike collected 20+ email records from Al in regards to
    various activities listing misconduct of the team and why there is collective
    retaliation affords. (Please see attached emails)
- A follow up HR-EEO inquiry is submitted on April 12th, 2021 under under **VZB HR EEO Report
  #459579811501** as instructed by NAVEX Global representative, a third party firm handling record
  keeping on behalf of Verizon. This exchange is recorded under Support Request **#02015037** by
  Anthony Allen, EthicsPoint Customer Support representative. As of today, there is no formal follow-
  up to the employee on VZB Ethics portal or Navex Global System (Please see the print-out of the
  report attached- **(See supporting documents attached)**

Rebuttal to the statement of *lack of examples*, outlined on page 2 of 14 on the employer's position
statement dated June 17th, 2021. The employer's footnote #3 further acknowledges the numerous
complaints filed against the manager and certain people in the team.

- Examples of the "Various slurs" were addressed on all three HR complaints filed internally as well as
  the HRBP calls held internally. In addition, these concerns and examples were relayed to the EEOC
  investigators throughout the investigation over the phone as well as in writing. (Please see attached
  emails on EEOC Portal. **(See supporting documents attached)**

  Some of the negative behaviors of others were acknowledged by the Sr. Manager, Supervisor,
  Tom P. in an email dated 11/05/2019 where Tom P. wrote *".... With the hallway talk and
  perception we need to keep tabs on time out of the office.... Please be aware of the eyes all
  over the place especially outside our group..."*. **(See supporting documents attached)**

  In addition to this email, Tom P. also replied to Al's email, on 11/06/2019 indicating *"I just want
  you to be clear on what the perception is.... I don't take what 90% of folks say without valid
  facts and for the most part snide comments I let go in one ear and out the other..."* then
  indicated *"Our last meeting was kind of a critical statement I was making to at least stop the
  talk within our team and worry about yourself..."*. **(See supporting documents attached)**

  As a conclusion to the examples, the employee had provided and continue to provide examples
  internally, only to get retaliated further. The employee formally requested to carry a voice
  recorder or body-cam only to be used for purposes of defense against retaliation. This request
  was turned down by the VZB HRBP Michael Calantone (herein "Mike C.") over the phone during
  the call that took place on 11/05/2020.

Rebuttal to the defense paragraph in regards to the retaliation details outlined on paragraph #2 on page 2 of 14 on the employer's position statement dated June 17th, 2021.

- Shortly after the initial HR complaint Al started to face changes in work environment, work duties, work load and scope of responsibilities. These are including but not limited to the following;

  o Tom P. started assigning more work on Al in late 2019 after Bonnie Beach (hereinafter "Bonnie" or "Bonnie B.") left the team. Bonnie shared half the workload of BAU (Business As-Usual) engineering with Al. Bonnie had Western half of the state. After Bonnie's departure Al was assigned her work. The new hire Steven K. got an assignment to help Marc Fisher who works under different team called Verizon-1F (One Fiber Team). Please see email from Tom to the team indicating he will hire a replacement for Bonnie B. prior to Al's first email vs the other examples where Al to take on her responsibilities after the HR complaint.

    This is the very first attempt of retaliation post-HR-complaint. Therefore, a reasonable person in a jury sitting would consider this as an adverse employment action following a protected activity.

  o In addition to this, Tom P. mandated that Al start inspecting manholes in downtown Milwaukee. He rejected Al's request of using a contractor for this manual work which is a common practice across the Midwest organization. He also rejected to supply him the required training of the safety tools to pump toxic water, purge toxic fumes, etc... In addition, he rejected to supply him with necessary traffic control elements. (See email exchange between Tom & Al dated March 2020).

    This assignment is contrary to his statement to the contractor dated on 6/22/2021 indicating no one in the team is trained to enter or inspect the manholes.

    ▪ This is also an adverse employment action to send a turf-manager OR an Engineering Specialist into an OSHA regulated worksite without the proper Personal Protective Equipment (PPE) mandated by OSHA and VZB codes. A reasonable person in a jury setting would also count this as an adverse employment action following a protective action. Therefore, given the timeline of events it would appear as a probable cause in a court case.

  o During the time where Tom mandated Al to inspect manholes Al suffered slip and fall accidents/incidents numerous times where he sustained a herniated disc at L5-S1 lumbar-disc. Al suffered a permanent injury requiring continuous physical therapies *(See attached medical reports and therapy notes)*

---

[4] Per, *42 U.S.C. § 2000e-2(a)* and *42 U.S.C. § 2000e-3* The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title [section 703 or 704]

## Protected Activities[7, 8, 9]:

- Three HR complaints about workplace discrimination against Al and others.
- One HR complaint about workplace discrimination against another employee, Bonnie Beach.
- Two legal contacts in regard to federal non-compliance concerns.

## Adverse actions against Al

- Increased workload, (See emails Tom mandating Al to go into underground manhole structures minimum 4-5 a day without any PPE or field contractor for traffic control)
- Workplace harassment (See emails in regard to "The Dog Incident" and group humiliation and defaming of Al in various emails)
- Lower qualified work assignments
- Pay cut due to poor performance ratings. Zero pay increase for Al as opposed to everyone else in team received 3-5% increase.

# DISCUSSION

Respondent contends that the Commission should dismiss this case for lack of probable cause because Al has not set forth a prima facie case of discrimination by a preponderance of evidence, in the Respondent's Position Statement. However, the standard to find a probable cause is not based on prima facie showing; rather, probable cause should be found when there is "sufficient evidence upon which a fact-finder could form a reasonable belief that it is more probable than not that the respondent committed an unlawful practice *(42 U.S.C. § 2000e-2(a))*[4]. Furthermore, as outlined in "*(42 U.S.C. § 2000e(m))*" the term "demonstrates" means meets the burden of production and persuasion. The facts set forth by Al in this case as well as the attached hereto easily satisfy the probable cause standard. And, while not legally required at this stage of the proceedings, the facts also support Al's demonstration of a prima facie case of discrimination in a workplace.[5]

I.     **The Evidence Supporting Al's Claims of Discrimination and Continuous Retaliation Are Superior to the Evidence Proffered by the Respondent.** [8, 9]

The evidence presented by Al in this case proves that the company acted with intentional discriminatory animus resulting in the deprivation of Al's fundamental civil rights.[6]

In the instant case, both the employee and the employer recognize that there were series of HR complaints about workplace harassment, discrimination and retaliation not only against Al but also other minorities who are included in the protected class.

The employer fails to address the increased workload, continuous harassment details the employees provided and also lies about the chain of events on when Al's work responsibilities changed.[8, 9]

## II.     AI Set Forth Sufficient Evidence for The Commission to Find Probable Cause [10]

A)  The respondent's hostile and different treatment of AI compared to other members of the team, which are all White and Christian in faith, establishes additional evidence of religious discrimination as well as circumstantial evidence of race, color, ethnic background, national origin and disability discrimination. [10]

Discriminatory motive can be inferred from the differences in the treatment of two groups. [10]

Direct evidence "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present" in the challenged conduct. [10]

Direct evidence can consist of statements of discriminatory intent. (See chain of email about "The Dog Incident" where AI clearly make apologies to the team about rescuing a dog. Tom replies to AI in an email indicating he should not have sent the email despite AI complains about Corey and Marc's statements about AI's trustworthiness. This incident was also shared with HRBP). [10]

## III.    The Evidence Presented by AI Establishes a Prima Facie Case of Discrimination in a workplace

To prove a prima facie case of discrimination, a complainant must be a member of a protected class under G. L. c. 272, § 98 and denied access to equal rights or restricted in the use of services, Workplace accommodations, permitted under The Americans with Disabilities Act. (See WI link) [5,6,7,8,9,10] The initial burden of establishing a prima facie case is not meant to be onerous; rather, the burden is "easily made" by simply producing evidence that the challenged conduct was "more likely than not" based upon impermissible factors. [5,6,7,8,9,10]

Title I of the ADA prohibits disability-based discrimination in employment. The Equal Employment Opportunity Commission (the Commission or the EEOC) is responsible for enforcement of title I (and parts of title V) of the ADA. Pursuant to the ADA as amended, the EEOC is expressly granted the authority and is expected to amend these regulations. 42 U.S.C. 12205a. Under title I of the ADA, covered entities may not discriminate against qualified individuals on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment. 42 U.S.C. 12112(a). For these purposes, "discriminate" includes (1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of the applicant or employee; (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicants or employees to discrimination; (3) utilizing standards, criteria, or other methods of administration that have the effect of discrimination on the basis of disability; (4) not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity; (5) denying employment opportunities to a job applicant or employee who is otherwise qualified, if such denial is based on the need to make reasonable accommodation; (6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with

disabilities unless the standard, test or other selection criterion is shown to be job related for the position in question and is consistent with business necessity; and (7) subjecting applicants or employees to prohibited medical inquiries or examinations. See 42 U.S.C. 12112(b), (d).


(CONCLUSION)

Employers that are Federal government contractors or subcontractors also may be covered by Executive Order 11246, which prohibits discrimination on the basis of race, color, national origin, religion, and sex, and section 503 of the Rehabilitation Act, which prohibits disability discrimination. The Department of Labor, Office of Federal Contract Compliance Programs, administers and enforces these workplace prohibitions. (Cite: EEOC regulations at 29 C.F.R. Part 1640 (issued jointly with the Department of Justice, 28 C.F.R. Part 37)


The EEOC is responsible for coordinating the Federal government's employment non-discrimination effort. The EEOC is required to review regulations and other EEO policy-related documents before they are issued to ensure consistency in the Federal government's effort to combat workplace discrimination.

Under Executive Order 12067, EEOC has responsibility for enforcing all Federal EEO laws and the duty to coordinate and lead the Federal government's effort to eradicate workplace discrimination.

[180] See, e.g., EEOC v. Prospect Airport Servs., Inc., 621 F.3d 991, 1000 (9th Cir. 2010) (explaining that "[t]he "required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct" (alteration in original)); Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010) ("[A] plaintiff need not show that her [work] environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."); Williams v. Gen. Motors Corp., 187 F.3d 553, 563 (6th Cir. 1999) (explaining that in determining whether the alleged conduct rises to the level of severe or pervasive, a court should consider the factual "totality of the circumstances," and that using a "holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, the impact of the separate incidents may accumulate, and the work environment created thereby may exceed the sum of the individual episodes"); see also, e.g., Shanoff v. Ill. Dep't of Hum. Servs., 258 F.3d 696, 705 (7th Cir. 2001) (six instances of "rather severe" harassment over four months were sufficient to allow a reasonable jury to rule in favor of plaintiff). (Cite https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination)

EXHIBITS:

- Exhibit #1; OSHA Summary
- Exhibit #2; Verizon HR Records
- Exhibit #3; Verizon Employee Records
- Exhibit #4; Supporting Documents


EXHIBITS (CONFIDENTIAL)
- Exhibit A; Medical Records (Confidential)
- Exhibit B; Email Records (Confidential)
-

## TERMS AND DEFINITIONS

- **DOL: Department of Labor**
- **LSCW: Licensed Clinical- Social Worker**

"Social workers attend graduate school in social work, earning an MSW (master of social work) or LCSW (licensed clinical social worker) degree. Training typically includes two years of coursework and practical experience working at agencies in the community." Per
https://dsps.wi.gov/Pages/Professions/SocialWorkerLicensedClinical/Default.aspx

- **OSHA: Occupational Safety and Health Administration**

With the Occupational Safety and Health Act of 1970, Congress created the Occupational Safety and Health Administration (OSHA) to ensure safe and healthful working conditions for workers by setting and enforcing standards and by providing training, outreach, education and assistance.

- **UG: Underground** (UG) manholes or other below ground structures occupied with telecom lead, copper of fiberoptic cables or other cables owned or maintained by city or the power company.
- **PCP:** A primary care provider (PCP) is a health care practitioner who sees people that have common medical problems. This person is most often a doctor. However, a PCP may be a physician assistant or a nurse practitioner. The PCP is often involved in client's care for a long time.
- **Facet Arthrosis;** "Minor lower back pain is fairly common among adults. But severe, constant pain in the back can happen, especially as you get older. Facet arthrosis is a condition that may affect older adults and people who have suffered injury or trauma to their back. Facet arthrosis can be a painful condition and affect your quality of life." Per online webMD; https://www.webmd.com/arthritis/what-is-facet-arthrosis

- **OFCCP**: USA, DOL, Office of Federal Contract Compliance Programs.

[5] Per, SEC. 2000e-6. *[Section 707]* (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

[6] Per, Section 1977 of the Revised Statutes (42 U.S.C. 1981) (2) Disability. In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and the regulations implementing section 501, or who violated the requirements of section 501 of the Act or the regulations implementing section 501 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

[7] It is well-settled that Title VI, Legal Manual of Department Of Justice, protects against retaliation. See, e.g., Peters v. Jenney, 327 F.3d 307, 318 (4th Cir. 2003); Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 83 (D.D.C. 2003); Gutierrez v. Wash. Dep't of Soc. & Health Servs., CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005). When a person reasonably believes that he or she has been the victim of discrimination that Title VI or other federal law prohibits, or has witnessed another person being discriminated against, that person should be able to report the alleged discrimination without fear of retaliation or fear that doing so will further jeopardize accessing benefits or services. Similarly, a person should be free to access the services, programs, and activities that federal financial assistance supports without fear that a recipient might discriminate against him or her merely for seeking access.

[8] It is well-settled that neither an agency nor a court need find that the underlying conduct about which the individual complained is discriminatory in order for the retaliation protection to attach. Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("[T]here is nothing [in the wording of the participation clause] requiring that the charges be valid, nor even an implied requirement that they be reasonable."); accord Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 358 (D. Mass. 2013) (quoting Wyatt), aff'd, 799 F.3d 99 (1st Cir. 2015); Slagle v. Cty. of Clarion, 435 F.3d 262, 268 (3d Cir. 2006); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999) ("The underlying charge need not be meritorious for related activity to be protected under the participation clause.") (citing Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999))

[9] Under Title VI, the evidence must show that (1) an individual engaged in protected activity of which the recipient was aware; (2) the recipient took a significantly adverse action against the individual; and (3) a causal connection exists between the individual's protected activity and the recipient's adverse action. See Peters, 327 F.3d at 320; Emeldi v. Univ. of Oregon, 673 F.3d 1218, 1223 (9th Cir. 2012); Palmer v. Penfield Cent. Sch. Dist., 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013); Kimmel, 639 F. Supp. 2d at 43; Hickey v. Myers, 852 F. Supp. 2d 257, 268 (N.D.N.Y. 2012); Chandamuri, 274 F. Supp. 2d at 84.

[10] "[A]although providing a similarly situated comparator is usually the most probative means of proving that an adverse action was taken for discriminatory reasons, it is not absolutely necessary." *Trs. of Health & Hosps. of Boston, Inc.*, 449 Mass. at 683.

**What: Employment Discrimination by supervisor and several team members.**
**Where: MCI Metro Srvc, LLC D.B.A Verizon Com Inc. New Berlin, WI, 53151.**
**When: Between Fall of 2019 and Spring of 2021.**
**Who: Employee, Alper Kolcu (Hire date: 05/20/19); Supervisor: Thomas Pietila & team**
**EEOC Claim#  443-2021-00971**
**(Pending intake call scheduled on 04/15/21 by U.S. EEOC)**

I initially complained to my employer MCI Communications D/B/A Verizon back in October of 2019. Initial complaint included harassments from my supervisor as well as few other individuals he has close friendship. (Those are mostly referred as my ethnic background as well as religious background. My supervisor called me into his office and told me "He didn't know I wasn't Christian, questioned by faith and my familiy's faith numerous times. Sometimes he referred to Middle-Easterners his Army shot as he was in the army, as retired veteran.)

Once he found out about my complaint he initiated a retaliation actions including but not limited to demotion to a lower level responsibility, lower bonus, defaming by team and the rest of the organization.

I was not contacted by HR back then since it was changed and the new person started in February of 2020. She didn't quite understand the scope and tried to resolve the matter which didn't help. Verizon denied the retaliation concerns.

I was so stressed that I took 6 months of Short-Term disability due to stress at work, this was approved by my primary care Dr, my therapist as well as an independent psychiatrist. Upon depleting the STD we requested to change organizations under WPA (Workplace Accommodations) procedure, which was denied, and I was given up to 2/15/2021 to return to my work.

Since I lost my car and went thru financial hardship I went back to my work only to found out that he gave me a "Developing" rate and added remarks as follows:

"Overall Performance Summary:

Alper performed his work duties for approximately (4) months in 2020 because he was out on an approved leave of absence for the majority of the year, from 3/26/20 – 4/7/20 and then 5/4/20 through 12/31/20.

In the beginning of the year, Alper was responsible for the BAU role for the Milwaukee and Madison markets. One of his strengths in this role was communicating with municipalities. He also had some opportunities for improvement in this role, as it related to providing requested data in a timely manner and meeting deliverables. For instance, he did not follow the VZ internal policies and practices that were associated with BAU for the Kenosha project.

Alper and I had discussions about his missed deadlines and my expectations on him meeting deliverables. I will continue to provide Alper support and guidance in 2021 to help him improve his performance.

Pietila, Thomas John2/24/2021"

He scheduled this review the afternoon a day prior to last day for signature and requested that I sign it. I refused to sign and contacted HR about retaliation review.

Currently I have applied to 60+ job positions within the company, interviewed for two. I am told by a Sr. Manager, at his level, that the type of review and comments he included in my End-Of-Year performance has little to no chance for a job interview for me internally.

Not to mention, I received 0% raise, lower bonus and remarks that would stay at duration of my employment. The project he mentions is from 2019 and I have records indicating both him and his supervisor approved it back in December of 2019 after we went through the alternatives.


I disputed the facts and refused to sign. Currently on quarantine due to positive covid results. I presented the factual data to Verizon HR once again. And requested one final review for retaliation since he was aware of the project in question back in 2019.